# NELSON, WARDEN *v.* O'NEIL

No. 336.   Argued March 24, 1971—Decided June 1, 1971

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACK, HARLAN, WHITE, and BLACKMUN, JJ., joined. HARLAN, J., filed a concurring opinion, *post*, p. 630. BRENNAN, J., filed a dissenting opinion, in which DOUGLAS and MARSHALL, JJ., joined, *post*, p. 632. MARSHALL, J., filed a dissenting opinion, *post*, p. 635.

*Charles R. B. Kirk,* Deputy Attorney General of California, argued the cause for petitioner. With him on the brief were *Evelle J. Younger,* Attorney General, *Albert W. Harris, Jr.,* Assistant Attorney General, and *John T. Murphy,* Deputy Attorney General.

*James S. Campbell,* by appointment of the Court, 400 U. S. 955, argued the cause and filed a brief for respondent.

MR. JUSTICE STEWART delivered the opinion of the Court.

The respondent, Joe O'Neil, was arrested along with a man named Runnels when the police of Culver City, California, answered a midnight call from a liquor store reporting that two men in a white Cadillac were suspiciously cruising about in the neighborhood. The police responded to the call, spotted the Cadillac, and followed it into an alley where a gun was thrown from one of its windows. They then stopped the car and apprehended the respondent and Runnels. Further investigation revealed that the car had been stolen about 10:30 that night in Los Angeles by two men who had forced its owner at gunpoint to drive them a distance of a few blocks and then had robbed him of $8 and driven off. The victim subsequently picked Runnels and the respondent from a lineup, positively identifying them as the men who had kidnaped and robbed him.

Arraigned on charges of kidnaping, robbery, and vehicle theft, both the respondent and Runnels pleaded not

guilty, and at their joint trial they offered an alibi defense. Each told the same story: they had spent the evening at the respondent's home until about 11 p. m., when they had left together. While waiting at a bus stop they were picked up by a friend driving a white Cadillac, and he offered to lend them the car for a few hours while he went into a nightclub. They accepted the offer, and once on their way discovered that there was a gun in the glove compartment. They entered an alley in search of a place to dispose of the gun, since they were afraid of being stopped with it in the car. Soon after throwing the gun out of the window they were stopped by the police and arrested. The supposed friend was not called as a witness and was not shown to be unavailable, but other witnesses corroborated parts of their alibi testimony.

The owner of the white Cadillac made a positive in-court identification of the defendants, and a police officer testified to the facts of the arrest. Another police officer testified that after the arrest Runnels had made an unsworn oral statement admitting the crimes and implicating the respondent as his confederate. The trial judge ruled the officer's testimony as to the substance of the alleged statement admissible against Runnels, but instructed the jury that it could not consider it against the respondent. When Runnels took the stand in his own defense, he was asked on direct examination whether he had made the statement, and he flatly denied having done so. He also vigorously asserted that the substance of the statement imputed to him was false. He was then intensively cross-examined by the prosecutor, but stuck to his story in every particular. The respondent's counsel did not cross-examine Runnels, although he was, of course, fully free to do so. The respondent took the stand on his own behalf and told a story identical to that of Runnels as to the activities of the two on the night

in question. Both the prosecutor and Runnels' counsel discussed the alleged confession in their closing arguments to the jury, and the trial judge repeated his instruction that it could be considered only against Runnels.

The jury found both defendants guilty as charged. After unsuccessful efforts to set aside the conviction in the California courts, the respondent applied for federal habeas corpus relief in the United States District Court for the Northern District of California, and while the case was pending there this Court decided *Bruton* v. *United States,* 391 U. S. 123, and *Roberts* v. *Russell,* 392 U. S. 293, holding that under certain circumstances the Confrontation Clause of the Sixth Amendment,[1] applicable to the States through the Fourteenth,[2] is violated when a codefendant's confession implicating the defendant is placed before the jury at their joint trial.[3] The District Court ruled that the respondent's conviction had to be set aside under *Bruton* and *Roberts,* and the Court of Appeals for the Ninth Circuit affirmed. 422 F. 2d 319 (1970). Petitioner then sought a writ of certiorari in this Court, contending, first, that there was no constitutional error under *Bruton* and *Roberts,* second, that any error there might have been was harmless beyond a reasonable doubt under the doctrine of *Chapman* v. *California,* 386 U. S. 18, and, third, that the District Court should have required the respondent first to seek redress in the state courts, which had had no opportunity to consider the *Bruton* claim. We granted certiorari to

---

[1] The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[2] See *Pointer* v. *Texas,* 380 U. S. 400; *Douglas* v. *Alabama,* 380 U. S. 415.

[3] *Roberts* v. *Russell,* 392 U. S. 293, held that the decision in *Bruton* v. *United States,* 391 U. S. 123, is applicable to the States and is to be applied retroactively.

consider these issues. 400 U. S. 901. Since we agree with the petitioner that there was no violation of the Constitution in this case, it is unnecessary to consider the other questions presented.

Runnels' out-of-court confession implicating the respondent was hearsay as to the latter, and therefore inadmissible against him under state evidence law. The trial judge so ruled, and instructed the jury that it must not consider any part of the statement in deciding whether or not the respondent was guilty. In *Bruton,* however, we held that, quite apart from the law of evidence, such a cautionary instruction to the jury is not an adequate protection for the defendant where the codefendant does not take the witness stand. We held that where the jury hears the codefendant's confession implicating the defendant, the codefendant becomes in substance, if not in form, a "witness" against the defendant. The defendant must constitutionally have an opportunity to "confront" such a witness. This the defendant cannot do if the codefendant refuses to take the stand.

It was clear in *Bruton* that the "confrontation" guaranteed by the Sixth and Fourteenth Amendments is confrontation *at trial*—that is, that the absence of the defendant at the time the codefendant allegedly made the out-of-court statement is immaterial, so long as the declarant can be cross-examined on the witness stand at trial. This was confirmed in *California* v. *Green,* 399 U. S. 149, where we said that "[v]iewed historically . . . there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Id.,* at 158. Moreover, "where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the con-

clusion that the admission of his out-of-court statements does not create a confrontation problem." *Id.*, at 162. This is true, of course, even though the declarant's out-of-court statement is hearsay as to the defendant, so that its admission against him, in the absence of a cautionary instruction, would be reversible error under state law. The Constitution as construed in *Bruton,* in other words, is violated *only* where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for "full and effective" cross-examination.

The question presented by this case, then, is whether cross-examination can be full and effective where the declarant is present at the trial, takes the witness stand, testifies fully as to his activities during the period described in his alleged out-of-court statement, but denies that he made the statement and claims that its substance is false.

In affirming the District Court, the Court of Appeals relied heavily on the dictum of this Court in *Douglas* v. *Alabama,* 380 U. S. 415, 420, that "effective confrontation" of a witness who has allegedly made an out-of-court statement implicating the defendant "was possible only if [the witness] affirmed the statement as his." The Court in that case also remarked that the witness "could not be cross-examined on a statement imputed to but not admitted by him." *Id.*, at 419. Of course, a witness *can* be cross-examined concerning a statement not "affirmed" by him, but this dictum from *Douglas* was repeated in *Bruton, supra,* at 127. In *Douglas* and *Bruton* (and in the other confrontation cases before *Green*) [4] there was in fact no question of the effect of an affirmance or denial

---

[4] *Brookhart* v. *Janis,* 384 U. S. 1; *Barber* v. *Page,* 390 U. S. 719; *Roberts* v. *Russell,* 392 U. S. 293; *Harrington* v. *California,* 395 U. S. 250.

of the incriminating statement, since the witness or codefendant was in each case totally unavailable at the trial for any kind of cross-examination. The specific holding of the Court in *Bruton* was:

"Plainly, the introduction of [the codefendant's] confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since [the codefendant] did not take the stand. Petitioner thus was denied his constitutional right of confrontation." 391 U. S., at 127–128.

This Court has never gone beyond that holding.

In *California* v. *Green, supra,* the defendant was accused of furnishing marihuana to a minor, partly on the basis of an unsworn statement, not subject to cross-examination, made by the minor himself while he was under arrest for selling the drug. When the minor, not a codefendant, took the stand at the defendant's trial, he claimed that he could not remember any of the incriminating events described in his out-of-court statement, although he admitted having made the statement and claimed that he believed it when he made it. The earlier statement was then introduced in evidence to show the truth of the matter asserted, and this Court held it admissible for that purpose. The circumstances of *Green* are inverted in this case. There, the witness affirmed the out-of-court statement but was unable to testify in court as to the underlying facts; here, the witness, Runnels, denied ever making an out-of-court statement but testified at length, and favorably to the defendant, concerning the underlying facts.

Had Runnels in this case "affirmed the statement as his," the respondent would certainly have been in far worse straits than those in which he found himself when

Runnels testified as he did. For then counsel for the respondent could only have attempted to show through cross-examination that Runnels had confessed to a crime he had not committed, or, slightly more plausibly, that those parts of the confession implicating the respondent were fabricated. This would, moreover, have required an abandonment of the joint alibi defense, and the production of a new explanation for the respondent's presence with Runnels in the white Cadillac at the time of their arrest. To be sure, Runnels might have "affirmed the statement" but denied its truthfulness, claiming, for example, that it had been coerced, or made as part of a plea bargain. But cross-examination by the respondent's counsel would have been futile in that event as well. For once Runnels had testified that the statement was false, it could hardly have profited the respondent for his counsel through cross-examination to try to shake that testimony. If the jury were to believe that the statement was false as to Runnels, it could hardly conclude that it was not false as to the respondent as well.

The short of the matter is that, given a joint trial and a common defense, Runnels' testimony respecting his alleged out-of-court statement was more favorable to the respondent than any that cross-examination by counsel could possibly have produced, had Runnels "affirmed the statement as his." It would be unrealistic in the extreme in the circumstances here presented to hold that the respondent was denied either the opportunity or the benefit of full and effective cross-examination of Runnels.

We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights

protected by the Sixth and Fourteenth Amendments. Accordingly, the judgment is reversed and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE HARLAN, concurring.

I join in the opinion and judgment of the Court. I would, however, go further and hold that, because respondent's conviction became final before this Court decided *Bruton* v. *United States,* 391 U. S. 123 (1968), he cannot avail himself of that new rule in subsequent federal habeas corpus proceedings. See *Mackey* v. *United States,* 401 U. S. 667, 675 (1971) (separate opinion of this writer).

It is difficult to fathom what public policy is served by opening the already overcrowded federal courts to claims such as these. Respondent's trial and appeals were, at the time they occurred, conducted in a manner perfectly consistent with then-prevailing constitutional norms. A reversal of the conviction now would either compel the State to place an already once-tried case again on its criminal docket, to be retried on substantially the same (but now more stale) evidence or else force the State to forgo its interest in enforcing in this instance its criminal laws relating to kidnaping, robbery, and car theft because of the disappearance of evidence. Conversely, if federal habeas relief is denied on the merits, as it now is by this Court, the energies of the federal courts have been expended to no good purpose.

To justify such a serious interference with the State's powers to enforce its criminal law and the ability of federal courts to provide full, fair, and prompt hearings to those who have no other forum available should require the presence of a most substantial countervailing societal

interest. But what interest is conceivably promoted by further adjudication of the contentions respondent urges upon us? Surely, indulging his claims does not serve the function of assuring that state courts properly apply governing constitutional standards. For this is precisely what the California courts did in this case. See, *e. g., Delli Paoli* v. *United States,* 352 U. S. 232 (1957). Nor can it plausibly be argued that we perceive in this case serious issues as to whether respondent was in fact likely innocent of the crime for which he was convicted or whether he was subjected to an intolerable abuse of the prosecutorial function that rendered his trial fundamentally unfair.

The only rationale I can imagine that might support entertaining *Bruton* claims in federal habeas proceedings brought by state prisoners whose convictions had become final prior to the decision in *Bruton* and who had a full and fair opportunity to litigate their claims at trial and on appeal, is the notion that *Bruton* is somehow an unimpeachably correct decision, so infallibly just that other earlier decisions inconsistent with it must be treated as though they had never been made. Even were this a tenable position, the fact is, as the Court notes, that respondent is actually seeking an extension of the *Bruton* holding. More importantly, for me such an "infallibility" argument could rest on nothing more than the fanciful notion that perception of ultimate constitutional verity is always to be found in those who "came after" to this Court.

Such a drastic disruption of judicial processes and alteration of our traditional federal-state balance should be supported by more persuasive considerations than those which led the Court in *Roberts* v. *Russell,* 392 U. S. 293 (1968), to hold the *Bruton* rule fully "retroactive" in ap-

plication. I venture to repeat what I stated earlier this Term in *Mackey, supra:*

> "No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved." 401 U. S., at 667.

I think it unfortunate that substantial federal judicial energies have been expended, for virtually no purpose at all, on the adjudication of this habeas proceeding. Since the Court has decided to address the merits of respondent's contentions, however, I unreservedly join in its resolution of them.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, dissenting.

With all deference, I think the Court asks and answers the wrong question in this case. Under the law of California at the time of respondent's trial, admissions to a police officer by a criminal defendant after his arrest could not be used as substantive evidence against other defendants, whether or not the declarant testified at trial.[1] The question with which we are faced is not, therefore, whether the Sixth Amendment would forbid California from using Runnels' statement as substantive evidence against respondent O'Neil if it chose to do so. California rejected that choice: the jury in the present case was explicitly instructed that Runnels' statement could not be considered as evidence against O'Neil.

---

[1] See *People* v. *Aranda,* 63 Cal. 2d 518, 407 P. 2d 265 (1965); *People* v. *Roberts,* 40 Cal. 2d 483, 254 P. 2d 501 (1953). The California Evidence Code, presently in effect, did not become operative until January 1, 1967.

The question, therefore, is whether California, having determined for whatever reason that the statement involved in this case was inadmissible against respondent, may nevertheless present the statement to the jury that was to decide respondent's guilt, and instruct that jury that it should not be considered against respondent. I think our cases compel the conclusion that it may not.

In *Bruton* v. *United States*, 391 U. S. 123 (1968), we reviewed a federal trial in which the extrajudicial confession of one Evans, which implicated both Evans and Bruton in the crime charged, was set before the jury along with instructions that it could be considered as evidence only against Evans. Evans himself did not testify. We held, first, that the Sixth Amendment in those circumstances forbade the use against Bruton of Evans' statement; and second, that since there was a "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton's] guilt," the Sixth Amendment required that Bruton's conviction be reversed. *Id.*, at 126.

Shortly thereafter, we made clear that the second prong of our holding in *Bruton*—that instructing juries not to use one defendant's admissions against the other could not, in fact, prevent them from making such a use—had a constitutional basis.[2] In *Roberts* v. *Russell*, 392 U. S. 293 (1968), we reviewed a state criminal trial presenting facts substantially identical to those presented in *Bruton*. Roberts and one Rappe had been jointly tried on charges

---

[2] This point was explicitly made in *Bruton* itself by MR. JUSTICE STEWART:

"[C]ertain kinds of hearsay . . . are at once so damaging, so suspect, and yet so difficult to discount, that jurors cannot be trusted to give such evidence the minimal weight it logically deserves, *whatever* instructions the trial judge might give." 391 U. S., at 138 (concurring opinion) (emphasis in original).

to which Rappe had confessed to a police officer. Rappe's confession implicated both himself and Roberts; it was presented to the jury together with instructions that Rappe's extrajudicial statements could be considered as evidence only against Rappe, and not against Roberts. As in *Bruton,* we reversed. *Roberts* v. *Russell,* therefore, must stand for the proposition that as a constitutional matter, the risk that a jury will not follow instructions to disregard the statements of one codefendant against another is too great to tolerate in a criminal trial. For, as we pointed out in *Bruton,* "If it were true that the jury disregarded the reference to the codefendant, no question would arise under the Confrontation Clause, because by hypothesis the case is treated as if the confessor made no statement inculpating the nonconfessor." 391 U. S., at 126.

*Bruton* and *Roberts,* therefore, compel the conclusion that the Federal Constitution forbids the States to assume that juries can follow instructions that tell them to wipe their minds of highly damaging, incriminating admissions of one defendant that simultaneously incriminate another defendant whose guilt or innocence the jury is told to decide. In the present case, California itself has made the judgment that, although Runnels did take the stand, his extrajudicial statements could not be considered by the jury as evidence against respondent. Under *Bruton* and *Roberts,* California having made the determination that Runnels' statement could not be considered as evidence against O'Neil may not subvert its own judgment in some but not all cases by presenting the inadmissible evidence to the jury and telling the jury to disregard it. For the inevitable result of this procedure is that, in fact, different rules of evidence will be applied to different defendants depending solely upon the fortuity of whether they are jointly or

separately tried. This is a discrimination that the Constitution forbids.

Accordingly, I would affirm the judgment below. In no event, however, would I reach the question decided by the Court in this case. For if we assume that the jury did follow its instructions to disregard Runnels' statement against respondent, his complaint is obviously without foundation. If we assume that it did not, we still need not reach the question whether California could constitutionally allow Runnels' statements to be used as evidence against respondent, for California has not purported to do so.[3] Having made that judgment, California is bound to apply it to all defendants or to none. I dissent.

MR. JUSTICE MARSHALL, dissenting.

This case dramatically illustrates the need for the adoption of new rules regulating the use of joint trials. Here there is no question that Runnels' alleged statement to the police was not admissible under state law against O'Neil. But as my Brother BRENNAN points out and as this Court recognized in *Bruton* v. *United States*, 391 U. S. 123 (1968), there is a very real danger that the statement was in fact used against O'Neil.

Those that argue for the use of joint trials contend that joint trials, although often resulting in prejudice to recognized rights of one or more of the codefendants, are justified because of the saving of time, money, and energy that result. But, as this case shows, much of the supposed saving is lost through protracted litigation that results from the impingement or near impingement on a codefendant's rights of confrontation and equal protection.

---

[3] See n. 1, *supra*.

The American Bar Association's Project on Standards for Criminal Justice, Advisory Committee on the Criminal Trial, suggested that if a defendant in a joint trial moves for a severance because the prosecutor intends to introduce an out-of-court statement by his codefendant that is inadmissible against the moving defendant, then the trial court should require the prosecutor to elect between a joint trial in which the statement is excluded; a joint trial at which the statement is admitted but the portion that refers to the moving defendant is effectively deleted; and severance.* I believe that the adoption of such a practice is the only way in which the recurring problems of confrontation and equal protection can be eliminated.

---

*Section 2.3 of the American Bar Association Project on Standards for Criminal Justice, Joinder and Severance (Approved Draft 1968) provides:

"Severance of defendants.

"(a) When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court should determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court should require the prosecuting attorney to elect one of the following courses:

"(i) a joint trial at which the statement is not admitted into evidence;

"(ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

"(iii) severance of the moving defendant."