**Roosevelt CLARK, Petitioner,**

v.

**David P. HENRY, Administrator of Central Prison, and the State of North Carolina, Respondents.**

**Civ. A. No. 2772.**

United States District Court,
W. D. North Carolina.
Charlotte Division.

Dec. 22, 1971.

Jacob L. Safron, Asst. Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for respondents.

## ORDER

McMILLAN, District Judge.

The petitioner, Roosevelt Clark, is presently confined in Central Prison, Raleigh, North Carolina, where he is serving a sentence of "not less than 25 nor more than 28 years." This sentence was imposed on June 10, 1959, in Anson County Superior Court, Wadesboro,

North Carolina, by Judge Walter E. Johnston after Clark had been found guilty by a jury of second degree murder of his wife, Argatha Clark.

Nearly ten years later, Clark challenged his conviction in state post-conviction proceedings. A hearing was held for that purpose in Anson County Superior Court on April 22, 1969, at which Clark was represented by Mr. Robert E. Little, III, court-appointed counsel. At the conclusion of the hearing the presiding judge, James G. Exum, Jr., denied relief. On July 16, 1969, Clark's petition for writ of certiorari to the North Carolina Court of Appeals was also denied.

The notes taken by the court reporter at Clark's *trial* in 1959 have been destroyed, and no transcript of the trial is or could be made available.

The petitioner challenges his custody on the following three grounds, all of which were raised and considered in the state post-conviction proceedings:

1. "That petitioner was held in custody in the Anson County jail for a period of 91 days without being charged with a crime, without a warrant being issued, and without being allowed to post any bond."

2. "That he was denied the assistance of counsel to effectively assist him but was improperly represented at his trial and counsel failed to perfect his appeal to the Supreme Court of N. C."

3. "That important and crucial evidence of the alcoholic content in the blood of the alleged victim was withheld from the jury to petitioner's prejudice."

■ With respect to the first of these contentions, the court concludes that the relevant facts were fully, fairly, and correctly found at the petitioner's post-conviction hearing. The death certificate of Argatha Clark, Roosevelt Clark's wife, the woman whom he was convicted of murdering, indicates that she died on April 20, 1959. An autopsy was performed on her body by Dr. W. M. Summerville. The report of that autopsy is dated April 22, 1959, and states that the autopsy was performed that same day. All indications—including a longhand notation on that report, "Death April 20/59"—are that this autopsy was performed shortly after the woman's death. The warrant for Clark's arrest is dated April 23, 1959, with service indicated that same day, and complains that " * * * on or about the 20 day of April, 1959, Roosevelt Clark did unlawfully, wilfully and feloniously kill and slay one Agatha Clarke." Moran D. McClendon, at that time an associate of Walter E. Brock, Clark's court-appointed counsel, testified that the date of death was April 20, 1959, and Clark himself testified that his wife's death occurred suddenly, that she died on the way to the hospital and not after a long stay there, *and that he was not jailed till after her death.* The trial took place on June 9 and 10, 1959. There is no merit to the petitioner's first contention.

■ Clark's second alleged ground for relief is that his counsel was ineffective, principally because he failed to perfect Clark's appeal. With respect to this contention Judge Exum found as follows:

"8. That although no counsel was formally appointed to prosecute the petitioner's appeal, Judge Walter E. Brock and Moran D. McLendon, Jr., his attorneys at the trial, considered themselves to be petitioner's counsel at the time perfection of his appeal was considered, and were not awaiting a formal order of appointment before taking on the responsibility of representing the petitioner after the judgment was entered at his trial and while the decision with reference to perfecting his appeal was being considered; that Judge Brock did consult with the petitioner with reference to the appeal, and a decision was arrived at in which the petitioner participated, not to perfect the appeal, and no appeal was perfected."

This is not the situation in Weatherman v. Peyton, mem. dec., No. 12,761 (4th

Cir., 1970), where counsel failed to perfect the appeal. Instead, a deliberate decision was made, by petitioner and counsel, not to appeal, and the appeal was deliberately not perfected. Although in retrospect the decision against appeal may appear questionable, it was made with petitioner's participation and consent, and does not amount to deprivation of right to counsel.

The petitioner also alleges that his counsel was ineffective because he "failed to properly challenge such an invalid charge," "allowed him to be tried without offering essential evidence in defense of the charge," and generally, did not "properly represent" petitioner. The first of these additional grounds for the allegation of ineffective counsel—failure properly to challenge such an invalid charge—would appear to relate to Clark's contention that he was held for 91 days without being charged. Because the factual basis for the contention is erroneous, there would have been no reason for Clark's lawyer to "challenge the charge" on this ground. No other basis for challenging it is suggested by the petitioner and none appears in the record. The second additional ground alleged in support of the ineffective counsel contention seems to relate to the evidence of the alcoholic content of the deceased's blood. The post-conviction hearing transcript reveals that Clark's lawyer attempted to introduce this evidence but was not allowed to do so by the presiding judge. Counsel could have done no more. The error on that matter was not by counsel but by the judge. To the extent that this ground may relate to the alleged failure to call witnesses whom Clark wanted to be called in his behalf, it is also refuted by the record of the post-conviction hearing (T., pp. 26–27). The petitioner's general allegation that he was not "properly represented" finds little support in the record, and is insufficient to support relief.

Clark's contention that his counsel was ineffective and all the grounds alleged in support of that contention are foreclosed by the rule of Snead v. Smyth, 273 F.2d 838 (4th Cir., 1959), reiterated in Root v. Cunningham, 344 F.2d 1 (4th Cir., 1965) and Kearney v. Peyton, 360 F.2d 589 (4th Cir., 1966), that only in those extreme rare instances where the representation of counsel is so transparently inadequate as to make a farce of the trial is there ordinarily a deprivation of effective assistance of counsel.

Finally, petitioner complains because he was not allowed to show that the blood alcohol level of the deceased was 0.35%. This complaint, translated into constitutional terms, is that his right to confront adverse witnesses was unduly limited and his right to due process of law was denied when the trial judge refused to allow cross-examination of Dr. Summerville as to deceased's blood alcohol level, and related facts. This contention has merit.

From the transcript of the post-conviction hearing the following significant facts appear:

1. Dr. Summerville's autopsy revealed a blood alcohol concentration of 0.35%. It also revealed "There was a large, irregular, discolored area just lateral to the right eye in the temporal region. There was a small discolored area on the left side of the forehead. There were a number of old scars over the body. There were two scabbed, ulcerated areas, one involving the left knee and the other involving the lower portion of the shin bone. There were no other significant external findings."

2. The presiding judge refused to allow cross-examination of Dr. Summerville to prove deceased's blood alcohol level (T. p. 22).

3. Charles "Black Hawk" Little, who was "the chief witness" (T. p. 24) or "probably the principal witness" (T. p. 25) against the defendant, testified that the deceased was sober! (T. pp. 24, 25).

4. The contention and testimony of the defendant was that the deceased, his wife, died from drinking "canned heat" (T. p. 15) and that she "fell off the

porch" (T. p. 40) and on the street (T. p. 7) and that he had not killed her (T. p. 7).

5. The theory of the defense was that the coroner would have testified to a blood alcohol level of 0.35% and that this level (over three times the amount required to convict for drunken driving and *within the range which may produce death*) was or could have been the cause of death (T. p. 23), and also that the physical injuries resulted from a fall, perhaps caused by drunkenness, rather than from any beating (T. p. 40).

6. The prosecution, however, was allowed to offer *against* the defendant the death certificate containing the statement (hearsay as far as the doctor was concerned) that the deceased was "beaten to death by her husband, Roosevelt Clark."

It is apparent beyond question that the evidence of the deceased's level of blood alcohol was competent (a) to impeach the principal witness for the state who testified that the deceased was "sober" at the time of her death; (b) to show that the alcohol by itself could have been the cause of death; and (c) to explain the deceased's injury, which defendant contended was caused by a drunken fall from the porch into the street.

The question is whether exclusion of the evidence was a sufficiently gross departure from fundamental fairness, under the circumstances, to have deprived the petitioner of his constitutional rights to due process and confrontation of adverse witnesses.

In Grundler v. North Carolina, 283 F. 2d 798 (4th Cir., 1960), the Court expressed the relevant principle as follows:

"Normally, the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal." Grundler v. North Carolina, *supra.*

In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the Supreme Court held that the Sixth Amendment right of an accused to confront the witnesses against him is a fundamental right, that it includes the right to cross-examination, and that it is " * * * enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment." [See also, Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); and Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971).] Where the scope of cross-examination is unreasonably restricted, an accused's right to confront may be violated. Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).

"In the present case there was not, to be sure, a complete denial of all right of cross-examination. But the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false. Yet when the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-

of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." Smith v. Illinois, *supra.*

See also, Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

This court is of the opinion that under the principles of those cases Roosevelt Clark's right of confrontation was denied by the restriction which the trial judge placed on the cross-examination of Dr. Summerville, a restriction which "emasculated" not only the right of cross-examination of the particular witness, but also Clark's entire defense.

Cross-examination of the coroner was unreasonably restricted when the judge refused to allow counsel to question him to show on cross-examination (T. p. 22) that the blood alcohol level of the deceased was .35% and that this was sufficient to produce death. This evidence could have accounted for the fall, which could in turn have accounted for the head injury described in the death certificate; and it would in any event have drastically discredited the testimony of the key witness, Charles "Black Hawk" Little, who testified that the deceased was sober at the time of her death.

Although Bruton v. United States, *supra,* and Barber v. Page, *supra,* have been given retroactive application (see Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) and Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969), respectively), the retroactivity of Pointer v. Texas, *supra,* and Smith v. Illinois, *supra,* would appear to be an open question. This court is of the opinion that the principles of those cases should be applied retroactively.

The admission into evidence of the death certificate, particularly of the statement it contained (written by Dr. Leavitt who did not testify) that "deceased was beaten to death by husband, Roosevelt Clark" may well have been a further denial of the right of confrontation, although consideration of that event *per se* is not necessary to the decision of this case. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) and Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

Apart from any denial of Sixth Amendment rights, the undue restriction on cross-examination deprived Clark of due process of law under the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) and the separate opinions of Justices Harlan and Stewart in *Pointer* at 408 and 409, 85 S.Ct. at 1070 and 1071 respectively, In Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) and Turner v. Louisiana, 379 U.S. 466, 85 S. Ct. 546, 13 L.Ed.2d 424 (1965).

The exclusion of evidence of deceased's blood alcohol concentration "infringed specific constitutional protections" and "impugned fundamental fairness" and the petitioner was convicted and is confined in violation of the United States Constitution.

The writ of habeas corpus is allowed; the conviction and judgment are set aside; the defendants are directed to re-try the petitioner within a reasonable time or release him outright, and to notify this court by January 15, 1972, what course they will follow. If re-trial is to be had, a reasonable (in terms of his indigency) bond should be established.