**James Q. ELLSWORTH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6519.**

District of Columbia Court of Appeals.

Argued Dec. 6, 1972.

Decided Feb. 6, 1973.

Stephen S. Millstein, Washington, D. C., appointed by this court, for appellant.

Harold H. Titus, Jr., U. S. Atty., John A. Terry and Julius A. Johnson, Asst. U. S. Attys., entered appearances for appellee.

Before FICKLING, KERN and GALLAGHER, Associate Judges.

FICKLING, Associate Judge:

Appellant was convicted after a jury trial of one count of uttering, D.C.Code 1967, § 22–1401.

Appellant contends that the trial judge erred in failing to exclude, or at least limit, the effect of a statement made by the co-defendant Wallace to a police officer. We disagree and affirm.

On October 13, 1971, Michael Wallace presented a check at the main office of American Security & Trust Co. The check was made out to Wallace for $80 and was signed "Miriam T. Whitehead." The teller to whom the check was presented, being in doubt as to whether the signature of the purported drawer was genuine (there were some indications it had been "traced" from another document), asked the payee to wait while she got the check approved. She then discovered from a card in the files that some of Mrs. Whitehead's blank checks had been reported missing or stolen that same day. After a telephone call elicited the fact that Mrs. Whitehead had not signed the check presented by Wallace, a bank guard detained Wallace while the police were called. When Officer Shinton arrived, he asked Wallace where he had got the check. Wallace responded appellant had given it to him and that appellant

was outside if the officer wished to speak to him. The officer turned to go outside and saw appellant watching through a window. As the officer approached, appellant ran. He was apprehended a few blocks away in LaFayette Park.

Appellant and Wallace were jointly indicted and tried for this offense. During the Government's case-in-chief and at the conclusion of the officer's testimony, counsel for Wallace proffered that he would later call his client as a witness and he would testify to making the statement to the officer that he got the check from appellant. Counsel also stated that he would later recall the officer to corroborate his client's testimony. Therefore, he requested that he be allowed to bring out the statement presently on cross-examination rather than having to recall the officer. Over objection and argument by appellant's counsel, the trial judge permitted the testimony.

Appellant took the stand in his own defense. He testified that he had gone downtown with Wallace to look for work but that he had never seen the check in question until it was introduced in evidence. He stated that the reason he ran from the officer was "because I know Michael get in trouble a lots [sic]." Wallace, however, testified that appellant had asked him to cash the check because appellant did not have any identification. He further testified that he had told the officer in the bank that he had got the check from appellant.[1] The case was submitted to the jury which acquitted Wallace but found appellant guilty.

■ Appellant's contention that Wallace's statement to the officer should have been excluded, based on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is without merit. In *Bruton* the Supreme Court examined the practice of permitting a hearsay admission of one codefendant to be introduced in evi-

1. Appellant's counsel vigorously cross-examined both Wallace and the officer about the statement.

dence during a joint trial of several codefendants if the statement was limited by an instruction to the jury that they must consider the statement only as it relates to the guilt or innocence of the declarant. The Court held this practice violated the nondeclarant's sixth amendment right to confrontation where the declarant refused to take the stand and submit to cross-examination. *Bruton* simply is inapposite to the instant case. Here, Wallace took the stand, affirmed the statement, and was in fact subjected to vigorous cross-examination by appellant's counsel, and as the Court later held in Nelson v. O'Neil, 402 U.S. 622, 627, 91 S.Ct. 1723, 1726, 29 L.Ed.2d 222 (1971): "The Constitution as construed in *Bruton* . . . is violated *only* where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross-examination."[2] [Emphasis in original.]

■ Appellant's request for an instruction—that the statement be used only in determining Wallace's guilt or innocence—was properly refused. The statement when introduced through the officer was not hearsay because it was not being used to prove the truth of the matter asserted therein, but only to corroborate Wallace's testimony and to rebut any inference of recent fabrication of the statement.[3] An instruction to so limit the officer's testimony could have been given if it had been requested, but there was no basis for a *Bruton* type of cautionary instruction.

■ On appeal, for the first time, appellant questions the timing of the officer's testimony concerning the statement. We agree that the officer should not have been allowed to testify until Wallace had testified and been contradicted but, in view of

the fact that Wallace did testify and was contradicted, we find such error to have been harmless. The judgment of the trial court, therefore, is

Affirmed.

---

2. In Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), the Court dealt with the situation where the declarant takes the stand, denies making the admission at all, and goes on to testify favorably to the nondeclarant. The Court held that even in this more

difficult situation (denying rather than affirming), if the declarant takes the stand, there is no sixth amendment violation.

3. 4 J. Wigmore, Evidence §§ 1128–1129 (3d ed. 1940).