DECISION.
{¶ 1} Defendant-Appellant Kevin Carroll appeals his conviction on one count of felonious assault and one count of ethnic intimidation. We affirm the conviction.
 {¶ 2} During the early morning hours of November 24, 2001, a group of individuals assaulted Theodore Jenkins as he was walking home from work. The group beat Jenkins with a night stick and repeatedly stabbed him. After the assault, one of the members of the group threw a bottle at Jenkins and called him a "black nigger." Jenkins later identified this individual as Carroll.
 {¶ 3} The police later arrested Joshua Yaden on an unrelated charge. Yaden subsequently made statements that implicated himself, Carroll, and others in the assault.
 {¶ 4} Officer Julian Steele brought a Polaroid photograph of Carroll, along with the photographs of two other suspects, to a meeting with Jenkins. From the photographs, Jenkins positively identified Carroll as one of his attackers, but he failed to identify either of the other two suspects.
 {¶ 5} Carroll was indicted on two counts of felonious assault and one count of ethnic intimidation. At trial, Carroll's defense counsel elicited testimony from Officer Steele regarding Yaden's confession and implication of Carroll. Yaden refused to testify. The jury found Carroll guilty of both counts of felonious assault and the one count of ethnic intimidation.
 {¶ 6} Carroll now raises two assignments of error. In the first, he asserts that the trial court erred by convicting him following an unfair trial that violated his due-process rights. Carroll gives four supporting arguments: (1) that the testimony of Officer Steele regarding Yaden's confession should have resulted in a mistrial; (2) that the prosecution's withholding of a Crime Stoppers identification should have resulted in a new trial; (3) that the trial judge should have recused himself because he had received a co-defendant's guilty plea; and (4) that the conviction was against the manifest weight and the sufficiency of the evidence. Carroll's second assignment of error states that the trial court erred in overruling his motion to suppress Jenkins's pretrial identification of him. We overrule both assignments of error.
 I. Yaden's Confession {¶ 7} In the first issue raised under his first assignment of error, Carroll claims that Officer Steele's testimony regarding Yaden's unsworn confession was inadmissible and that the trial court was therefore in error by failing to grant a mistrial after Officer Steele's testimony.
 {¶ 8} Unsworn, out-of-court statements by an accomplice are generally inadmissible because they violate the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Confrontation Clause guarantees that all criminal defendants shall have the right to confront the witnesses against them.[1] Its main purpose is to ensure the reliability of the evidence against the defendant.[2] Thus, the extrajudicial statements may not be admitted unless they meet specific conditions.[3] Even where the statements of an accomplice are properly stricken after their presentation and the court instructs the jury to disregard those statements, there remains a substantial risk that the jury may look to the incriminating statements in determining guilt.[4]
The Confrontation Clause is violated only where the hearsay statement is that of an accomplice who is unavailable to testify and to be cross-examined.[5]
 {¶ 9} In Bruton v. U.S. and Lilly v. Virginia,[6] the United States Supreme Court held that statements by a co-defendant or accomplice against their penal interest do not categorically satisfy Confrontation Clause concerns. The Ohio Supreme Court specifically adopted the Lilly
opinion in State v. Madrigal.[7] The plurality opinion in Lilly divided statements against penal interest into three categories: (1) those used as voluntary admissions against the declarant; (2) those used as exculpatory evidence by a defendant who claims that the declarant committed, or was involved in, the offense; and (3) those used as evidence offered by the prosecution to establish the guilt of an alleged accomplice of the declarant.[8] Such statements are generally admissible if they fall into a firmly rooted hearsay exception or contain "adequate indicia or reliability."[9] When the prosecution uses statements to establish the guilt of an accomplice, the statements must contain adequate indicia of reliability.[10]
 {¶ 10} Our first step is to determine whether Yaden's statements fit into the third category. Carroll argues that the stricter standard for a category-three statement should have been applied in this case. But the facts indicate otherwise.
 {¶ 11} During cross-examination, defense counsel asked Officer Steele (1) whether Steele had re-interviewed Yaden; (2) when Officer Steele had learned about the thrown bottle; and (3) two questions concerning Officer Steele's failure to test the night stick involved in the assault. Steele's response to the first question was, "No, sir. I didn't have time. Once Mr. Yaden told me who was involved with him, I went and took care of that." Defense counsel did not object at this point and soon moved on to question two, to which Officer Steele responded, "Only thing I discovered is what was on tape, Mr. Yaden told us, his confession." Counsel promptly objected, and the court improperly overruled the objection on the grounds that Officer Steele was simply answering counsel's question. Later, explaining how he knew that he would not be able to obtain fingerprints, Officer Steele stated, "From my experience, on that type of material, the plastic of a night stick. But also again, like I said, I had a suspect that gave a confession." Counsel objected, and the objection was sustained for nonresponsiveness. Subsequently, in response to another question about the night stick, Officer Steele concluded, "I had enough evidence once I got a confession." At that point, defense counsel requested and was denied a mistrial.
 {¶ 12} The only references that Officer Steele made to the confession during direct and redirect examination were that Yaden's statements "led to a more stronger [sic] investigation," and he also mentioned the "development of other evidence."
 {¶ 13} It is plain from the testimony that the prosecution did not offer evidence regarding Yaden's statements. The statements therefore did not fall into category three as ones used by the prosecution to establish the guilt of an accomplice. The applicable standard was whether the statements met any of the firmly rooted exceptions to the hearsay rule or contained adequate indicia of reliability.
 {¶ 14} Yaden's statements here were not within a firmly rooted exception to the hearsay rule. Ordinarily, statements against penal interest are exceptions to the hearsay rule. But wrongheaded cases such as State v. Gilliam,[11] which allowed statements against interest to come in as evidence against a co-defendant, were overruled by Lilly. Even self-inculpatory statements do not fall within an exception to the hearsay rule. Yaden's statements therefore did not meet this exception, or any other exception, to the hearsay rule.
 {¶ 15} Moreover, Yaden's statements implicating Carroll did not contain adequate indicia of reliability. The statements were apparently made during the arrest on an unrelated charge. As we have already noted, even though Yaden's statements were against his penal interest, this did not amount to adequate indicia of reliability.[12] In Madrigal, one of the statements of the co-defendant was held to be untrustworthy only because it attempted to shift the blame away from the co-defendant and to place the blame for the crime on Madrigal.[13] In the present case, Yaden's statements did not attempt to shift the blame for the crime. He admitted to committing the assault along with Carroll and others. Nonetheless, this did not amount to adequate indicia of reliability.
 {¶ 16} Defense counsel asked the questions on cross-examination that elicited the response from Officer Steele about Yaden's confession. Though the officer should not have been permitted to mention the confession, the testimony was arguably induced by defense counsel's questions. The trial court sustained objections to the last two references to Yaden's statements and instructed the jury to disregard them. Defense counsel even admitted the next morning that he "may have opened the door for it." We are not persuaded this gave rise to reversible error.
 {¶ 17} Contrary to Carroll's assertion, the trial court never instructed Officer Steele to avoid mentioning Yaden's confession. (That was the prosecutor's responsibility — to caution his witness against blurting out inadmissible evidence.) The officer did not engage in malicious conduct and was not necessarily "laying in wait for an opportunity to poison the minds of the jury with Yaden's confession," as Carroll maintains on appeal.
 {¶ 18} We therefore find no merit in the first issue raised under Carroll's first assignment.
 II. Crime Stopper Tip {¶ 19} Carroll next argues that the state's failure to disclose a Crime Stopper tip deprived him of material evidence and should have resulted in a new trial. We hold that the failure to disclose did not amount to reversible error and did not warrant a new trial.
 {¶ 20} Brady v. Maryland[14] holds that the prosecution's withholding of evidence favorable to the accused violates due process where the evidence is material to guilt or punishment. Evidence is material if there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed.[15] A "reasonable probability" exists when the evidence is sufficient to put the case in a different light so as to undermine confidence in the outcome of the proceedings.[16] As long as the evidence is in the hands of the police, it is subject to a challenge on these grounds, regardless of whether the prosecution is aware of its existence.[17]
 {¶ 21} The Crime Stopper tip in question named Donny Blair as one of the perpetrators of the assault against Jenkins. As the state points out in its brief, however, the assault was the result of a group action, not the action of one individual. It is entirely possible that another individual was involved in the assault, but this was not exculpatory evidence for Carroll since Jenkins specifically identified Carroll as being one of his attackers. Jenkins was able to identify only two of his attackers out of a group of at least four. Evidence that someone else may also have been involved in the assault did not cast the case in a different light sufficient to undermine confidence in the outcome of Carroll's trial. Though it may have been prudent for the prosecution to have disclosed the tip, we are not convinced, given all the facts and circumstances here, that the prosecution's failure amounted to reversible error.
 {¶ 22} A new trial may be granted on the basis of newly discovered evidence. State v. Petro requires the movant to show that the evidence "(1) [d]iscloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."[18]
 {¶ 23} The tip was not material to Carroll's conviction. And, for this reason, the Crime Stopper tip was not likely to change the result if a new trial were granted. At best, the tip implicated Donny Blair or another individual in the assault. It did not present any evidence that suggested that Carroll was not involved in the assault. We therefore reject Carroll's second argument under his first assignment of error.
 III. Motion for Recusal {¶ 24} Carroll next contends that he was denied a fair trial because the trial judge failed to recuse himself. Carroll claims that the judge's taking of a co-defendant's plea on the day prior to Carroll's trial created a bias in the judge that prejudiced Carroll's trial.
 {¶ 25} "A judge's involvement in a plea bargain of a co-defendant does not mandate disqualification."[19] Even the authority Carroll cites in his brief supports the proposition that a judge need not recuse himself based solely on knowledge from prior proceedings.[20] In this case, therefore, the trial judge had no duty to recuse himself.
 {¶ 26} Carroll also failed to demonstrate how any alleged bias or prejudice affected his trial. Where the party alleging bias has failed to demonstrate actual prejudice arising from the judge's actions, there is no reversible error.[21] Nowhere in this record did the trial judge exhibit bias or prejudice. Even if there had been bias or prejudice in this case, Carroll has failed to demonstrate how it actually affected the outcome of the trial.
 {¶ 27} And even if a recusal would had been proper in this case, Carroll failed to properly file an affidavit of bias and prejudice with the Ohio Supreme Court. A party must submit an affidavit to the clerk of the Supreme Court of Ohio listing the specific allegations concerning the interest, bias, prejudice, or disqualification in order for the court to order the recusal of a judge.[22] Failure to file such an affidavit usually constitutes a waiver of any claim of error.[23] Carroll did not file such an affidavit. We reject Carroll's third argument under his first assignment of error.
 IV. The Sufficiency and Weight of the Evidence {¶ 28} Carroll next argues that the trial court's judgment of conviction was against both the sufficiency and the manifest weight of the evidence.
 {¶ 29} The standard for reviewing sufficiency is whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution.[24] A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[25] The court must weigh the evidence and consider the credibility of witnesses to determine whether the trier of fact lost its way in finding the defendant guilty. A new trial should be granted on the weight of the evidence only in exceptional cases.[26] And "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the case."[27]
 {¶ 30} The jury here found Carroll guilty of felonious assault and ethnic intimidation. A conviction for felonious assault requires a showing that the defendant knowingly caused serious physical harm to another.[28] And under the relevant statute for ethnic intimidation, "No person shall violate section 2903.21, 2903.22, 2909.06, or 2909.07, or division (A)(3), (4), or (5) of section 2917.21 of the Revised Code by reason of the race, color, religion, or national origin of another person or group of persons."[29]
 {¶ 31} The defendant need not actually have been found guilty of one of the listed violations to be guilty of ethnic intimidation, so long as there is sufficient evidence to show one of the violations.[30] The underlying offense in this case was menacing, which required a showing that Carroll knowingly caused another to believe that he would cause physical harm to the other person or his property.[31]
 {¶ 32} The evidence at trial showed that a group of individuals attacked Jenkins with a night stick and a knife. Jenkins needed multiple staples in his scalp to repair the damage, and suffered a lacerated kidney and other physical harm during the attack. Jenkins recognized Carroll as one of his attackers and specifically remembered that Carroll threw a bottle at Jenkins while yelling "black nigger" at him. This evidence, viewed in the light most favorable to the prosecution, was sufficient to find Carroll guilty of the charged crimes beyond a reasonable doubt. And despite conflicting testimony concerning Carroll's alibi, we are convinced that the convictions were not against the manifest weight of the evidence.
 {¶ 33} Because all of Carroll's arguments under his first assignment of error fail, the first assignment is without merit.
 V. Second Assignment of Error: The Pretrial Identification of Carroll Should Have Been Suppressed {¶ 34} Carroll's second assignment of error concerns the pretrial identification made by the victim. Carroll argues that the trial court erred in overruling his motion to suppress the identification.
 {¶ 35} Convictions based on an identification at trial following a pretrial identification by photograph should be set aside only if the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."[32]
A court should suppress a pretrial identification if the circumstances surrounding the identification were unnecessarily suggestive and the identification was unreliable under the totality of the circumstances.[33]
 {¶ 36} The circumstances surrounding the pretrial identification in this case were unnecessarily suggestive. Officer Steele showed Jenkins only three photographs. Two of those photographs were of Yaden and Eric Hensley, both suspects in this case. The other was of Carroll. Carroll was substantially larger than Yaden and Hensley, and did not even remotely resemble either of them. Carroll was effectively singled out in the photograph lineup, and even Officer Steele admitted that he would conduct juvenile lineups in a different manner in the future.
 {¶ 37} But our analysis does not end here. The identification must have been both impermissibly suggestive and unreliable under the circumstances. In determining whether an identification is reliable under the circumstances, the court should consider the following: (1) the witness's opportunity to view the suspect during the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty; and (5) the time elapsed between the crime and the identification.[34] We consider each of these factors in turn.
 {¶ 38} That all three photographs in the lineup were pictures of suspects in the case is of no import. Even a single photograph of the lone suspect in a case may be sufficient for pretrial identification purposes, provided the identification is reliable under the circumstances.[35]
 {¶ 39} Jenkins also had an ample opportunity to view Carroll during the crime. Jenkins testified that he looked at Carroll during the attack when Jenkins pulled the night stick away from another attacker and swung it at Carroll. Jenkins claimed that he barely missed hitting Carroll in the face. Further, Jenkins turned around and saw Carroll throw a bottle while yelling a racial slur in Jenkins's direction.
 {¶ 40} Jenkins had a sufficient degree of attention during the attack. Carroll claims on appeal that Jenkins did not have a high level of attention, "given that he had been struck on the head with a night stick." This argument is both callous and unsupported by Jenkins's testimony. In his testimony, Jenkins described in detail where the attack took place, where the participants were standing, and in which direction they fled after the assault. He even assisted counsel in creating a diagram of the incident. If his attention level was high enough to recall these details, it was certainly high enough to identify one of his attackers.
 {¶ 41} Jenkins did not accurately describe Carroll prior to the identification made from the Polaroid photograph. Jenkins referred only to a shorter, heavyset individual in his initial description of one of his attackers. Jenkins claimed that he was not skilled at verbally describing people and that he would have trouble describing even his own wife. The initial description was not an adequate description of Carroll. Jenkins was certain, however, that he had identified one of his attackers. When faced with a photo lineup of three suspects in the case (one of whom had already confessed), Jenkins recognized only Carroll. Even after Officer Steele instructed him to make sure that he was not identifying an innocent party, Jenkins was certain that Carroll had assaulted him.
 {¶ 42} Defense counsel stipulated that only two or three days had elapsed between the incident and the identification. Thus, the only questionable issue was whether Jenkins was able to accurately describe Carroll prior to the Polaroid lineup. But since we must examine the totality of the circumstances, we hold that the identification was reliable. Since Carroll failed to prove that the identification was unreliable, we overrule his second assignment of error.
 {¶ 43} Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
Sundermann, P.J., and Hildebrandt, J., concur.
[1] Sixth Amendment to the United States Constitution.
[2] Maryland v. Craig (1990), 497 U.S. 836, 110 S.Ct. 3157.
[3] State v. Madrigal, 87 Ohio St.3d 378, 2000-Ohio-448,721 N.E.2d 52.
[4] Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620.
[5] Nelson v. O'Neill (1971), 402 U.S. 622, 91 S.Ct. 1723.
[6] Lilly v. Virginia (1999), 527 U.S. 116, 119 S.Ct. 1887.
[7] Madrigal, supra.
[8] Lilly, supra.
[9] Ohio v. Roberts (1980), 448 U.S. 56, 100 S.Ct. 2531.
[10] Madrigal, supra; Lilly, supra.
[11] State v. Gilliam (1994), 70 Ohio St.3d 17, 1994-Ohio-348,635 N.E.2d 1242.
[12] Madrigal, supra.
[13] Id.
[14] Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194.
[15] U.S. v. Bagley (1985), 473 U.S. 667, 105 S.Ct. 3375.
[16] Id.
[17] Kyles v. Whitley (1995), 514 U.S. 419, 115 S.Ct. 1555.
[18] State v. Petro (1947), 148 Ohio St. 505, 76 N.E.2d 370.
[19] State v. Cornwell (1997), 81 Ohio St.3d 1205, 1206, 688 N.E.2d 511
(citations omitted).
[20] Commonwealth of N. Marianas Islands v. Bowie (C.A. 9, 2001),243 F.3d 1109.
[21] See State v. Stadmire, 8th Dist. No. 81188, 2003-Ohio-873.
[22] R.C. 2701.03.
[23] State v. Rojas (Dec. 29, 1995), 1st Dist. App. No. C-950091.
[24] State v. Hughbanks, 99 Ohio St.3d 365, 2003-Ohio-4121,792 N.E.2d 1081, citing State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
[25] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[26] Id., citing State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
[27] Section 3(B)(3), Article IV, Ohio Constitution.
[28] R.C. 2903.11(A)(1).
[29] R.C. 2927.12(A).
[30] See State v. Pies (Dec. 17, 1999), 1st Dist. Nos. C-990241 and C-990242.
[31] R.C. 2903.21, 2903.22.
[32] Simmons v. United States (1968), 390 U.S. 377, 384,88 S.Ct. 967.
[33] State v. Waddy (1992), 63 Ohio St.3d 424, 588 N.E.2d 819; Neil v.Biggers (1972), 409 U.S. 188, 93 S.Ct. 375; Manson v. Brathwaite (1977),432 U.S. 98, 97 S.Ct. 2243.
[34] State v. Waddy, supra, citing Neil v. Biggers, supra.
[35] State v. Barnett (1990), 67 Ohio App.3d 760, 588 N.E.2d 887.