NOT FOR FULL-TEXT PUBLICATION
File Name: 10a0447n.06

Nos. 08-6420; 09-5049

**FILED**

**Jul 21, 2010**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

CHRISTOPHER SUTTON (08-6420);
RENNIE TURNER, (09-5049);

        Defendants-Appellants.

        ON APPEAL FROM THE
        UNITED STATES DISTRICT
        COURT FOR THE MIDDLE
        DISTRICT OF TENNESSEE

_____/

**BEFORE: BOGGS, SUHRHEINRICH, and ROGERS, Circuit Judges.**

        **SUHRHEINRICH, Circuit Judge.** Defendant Christopher L. Sutton ("Sutton") appeals his conviction for conspiracy to structure currency transactions to avoid reporting requirements, in violation of 31 U.S.C. § 5324(a)(3), and Sutton and his co-defendant Rennie Turner appeal their sentences. Rennie Turner pled guilty prior to trial and appeals the reasonableness of his sentence. Sutton was tried and convicted before a jury with two other co-defendants. On appeal, he argues that 1) the Government presented insufficient evidence on several key elements of the structuring statute, 2) his right to confront his accusers was violated, and 3) the district court violated his ex post facto clause rights by using the wrong Sentencing Guidelines edition at trial. For the reasons set forth below, we **AFFIRM** Sutton's conviction and the sentences of both Defendants.

### I. Background

### A. The Conspiracy

The convictions in this case arise from an expansive scheme to illegally traffic in tobacco from 1998 to 2003. During this time period, the United States Department of Agriculture ("USDA") operated a tobacco marketing quota program to regulate the supply of tobacco. Part of this program was the burley tobacco allotment program that regulated the sale of burley tobacco in Kentucky, North Carolina, and Tennessee. The USDA issued a USDA Burley Marketing Card ("Card") to tobacco farmers in these states. Each Card could only be used to sell tobacco produced on the farm listed on the Card. The Card also limited the amount and type of tobacco that could be sold from each farm.

The conspirators sought to profit from sales of "excess tobacco"—which included selling tobacco grown on another farm with a Card as if it were grown on the designated farm, selling above a quota amount, or falsely designating tobacco. To this end, conspirators made cash purchases of tobacco in Pennsylvania, a non-quota state, of Pennsylvania type tobacco, mainly from Amish and Mennonite farmers. This tobacco was shipped to Tennessee and Kentucky and passed off as burley tobacco grown in compliance with the burley tobacco allotment program—in some years, non-quota tobacco from Pennsylvania/Maryland was identical or almost identical to Kentucky/Tennessee quota tobacco.

To provide the funds necessary for this operation, the co-conspirators structured financial transactions. Sutton and Robert D. Oldham ("Oldham") were the co-leaders. Sutton generally provided the funds to be structured. He was a tobacco executive and licensed USDA tobacco dealer who owned two tobacco companies in North Carolina: Coastal Leaf, Ltd. and CLP, Inc. He allegedly generated the cash to purchase excess tobacco and bribe tobacco executives. Oldham generally directed the operations of the conspiracy, including the generation of cash, but Sutton

2

sometimes directly arranged for cash to be structured. The other defendants received money from Sutton or Oldham through wire transfers or checks—generally in amounts of more than $10,000. They then generated cash in increments below $10,000, and either gave the cash to Sutton or Oldham or were directed by one of them as to how to use the cash. Rennie Turner's role in the conspiracy was to structure transactions and deliver the cash as directed, including transporting cash from Pennsylvania to Tennessee.

### B. Indictment and Trial

In June 2006, a grand jury returned an indictment against Sutton, Rennie Turner, and nine other individuals: Oldham, Joey Bowen, Ronald D. Bowen ("Ron Bowen"), Bobby C. Cates ("Cates"), Garth E. Middaugh ("Middaugh"), Clarence Shirk ("Shirk"), William A. Shotwell ("Shotwell"), Kenneth A. Swayne ("Swayne"), and Sam A. Turner ("Sam Turner"). The Government brought a three-count indictment: conspiracy to structure (every defendant except Shotwell and Sam Turner), conspiracy to falsify a material fact (Oldham, Shotwell, and Sam Turner),[1] and money laundering (Oldham only).[2] The indictment also contained a forfeiture allegation of $4,500,000.

Most of the defendants, including Rennie Turner, pled guilty prior to trial. Sutton was tried along with two co-defendants: Ron Bowen and Joey Bowen. Because Sutton, Joey Bowen, and Ron Bowen were only indicted for conspiracy to structure, the trial was limited to this count of the

---

[1]This charge related to false representations made when selling tobacco with a USDA Card.

[2]This charge related to a transaction between Oldham and a government agent. The Government alleged that Oldham traded two checks for cash that was represented as proceeds from narcotics trafficking.

3

indictment. The October 2007 trial lasted seven days. Witnesses at trial included government agents who had assisted in the investigation, bank officials, and cooperating defendants—Shirk, Swayne, Middaugh, and Oldham all testified for the Government. The cooperating defendants testified about their roles in the conspiracy and the roles of the other co-defendants. Some of the co-defendants, including Ron Bowen, wore a wire for the Government during the investigation. As a result, several wiretapped conversations were admitted into evidence.

Sutton did not testify in his defense, but he did present several witnesses who testified about the legitimate business dealings they had with him. Joey Bowen testified in his own defense. Ron Bowen did not testify and called no witnesses.

The jury found Sutton and Ron Bowen guilty. It found Joey Bowen not guilty. The district court sentenced Sutton to sixty months in prison, the statutory maximum, to be followed by two years of supervised release. The court also awarded the Government a forfeiture amount of $4,500,000, to be paid by Sutton. The court sentenced Rennie Turner to fifty-one months in prison.

## II. Sutton's Appeal

### A. Insufficiency of the Evidence

Sutton argues that the evidence adduced at trial was insufficient as a matter of law to support his conviction. This court reviews de novo a district court's denial of a motion for judgment of acquittal that challenges the sufficiency of the evidence. *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996) (citing *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir. 1990)). To ascertain whether Sutton has a valid sufficiency of evidence claim, this court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 52 (quoting

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (internal quotation marks omitted). The jury's verdict will stand unless it "is not supported by substantial and competent evidence upon the record as a whole." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) (citing *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007)). When making this inquiry, all reasonable inferences and credibility choices are made in support of the verdict. *Id.* (citing *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006)).

> The elements of structuring are as follows:
>
> (1) the defendant must, in fact, have engaged in acts of structuring; (2) he must have done so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000; and (3) he must have acted with the intent to evade this reporting requirement.

*United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005); *see also United States v. One Million Seven Hundred Thousand Dollars ($1,700,000.00) in U.S. Currency*, 545 F. Supp. 2d 645, 651-52 (E.D. Mich. 2008). Sutton appeals the sufficiency of evidence with respect to three elements needed for conviction: knowledge of the reporting requirement, intent to evade the reporting requirement, and the involvement of a domestic financial institution.

### 1. Knowledge

Sutton contends that the Government did not establish his "knowledge" of a conspiracy to structure currency transactions to evade reporting requirements. Sutton's argument fails, however, because the Government presented ample circumstantial evidence at trial to support its theory that Sutton had knowledge of the conspiracy. *See United States v. Johnson*, 26 F. App'x 441, 446 (6th Cir. 2001) (referring to circumstantial evidence to hold that the prosecution presented sufficient evidence to support the knowledge element of the money laundering statute). For example, Shirk

testified that Sutton had instructed him to keep cash transactions below $10,000. IRS Special Agent George Muench testified that when he asked Sutton, during another investigation in the 1990s that preceded this case, why he used checks in the amount of about $9,800, Sutton answered "it was easier." Charles Rice, Sutton's accountant during an unrelated IRS audit, testified that he believed Sutton had a "good understanding" of the financial reporting requirements based on his interactions with him during the audit. Finally, comments in the admitted wiretapped conversations suggested that Sutton knew about the financial reporting requirements. For instance, in one conversation, taped by Ron Bowen, the following exchange occurred:

> Rennie Turner: Long as you didn't write any under ten thousand dollars, ain't no, ain't against the law is it?

> Sutton: They always come up with somethin' called structuring, but they, there's a court ruling in ah Charlotte, and, and the judge flat ruled - he said, "If y'all want it for less than ten thousand dollars, change the Goddamn law." . . . But, you know . . . .

This evidence is sufficient to satisfy *Jackson*.

## 2. Intent

Sutton argues that credible evidence was not presented at trial to establish that he had the necessary "intent" to evade the financial reporting requirements. This argument fails because the Government presented sufficient evidence at trial of Sutton's intent to evade the structuring law. Shirk testified that he received checks or wire transfers in amounts above $10,000 and was directed by Sutton to "create cash" in increments below $10,000. Oldham testified that Sutton's role in the conspiracy was to provide the money. Oldham testified that on one occasion Sutton told him he needed $640,000 to bribe executives at R.J. Reynolds to buy some tobacco. Sutton provided a check

6

in that amount and Oldham arranged to have the money generated in amounts below $10,000. Oldham then arranged to have the cash delivered to Sutton. *Jackson* is therefore satisfied.

### 3. Domestic Financial Institution

Sutton contends that the Government failed to establish that he structured transactions "with one or more domestic financial institutions" pursuant to § 5324(a)(3). Sutton argues that, of the twenty-six different definitions for a domestic financial institution found in 31 U.S.C. § 5312, the only definitions that could be applicable in this case are an FDIC insured bank, a trust company, or a commercial bank. He concedes that the trial included testimony from different bank officials, but notes that none of the evidence at trial established that the financial institutions involved were federally insured or trust companies. He therefore argues that the only way the Government can meet its burden of proof is to establish that the transactions involved a commercial bank. Taking a definition from the Code of Federal Regulations, he argues that to meet this definition, the Government must establish that a bank was "organized under the laws of any State or the United States." 31 C.F.R. § 103.11(c)(1). He then concludes that the Government did not meet its burden because none of the evidence related to the banks' corporate charters, domestication, or the laws of the state under which they were organized.

The Fifth Circuit has employed a persuasive framework for dealing with this issue:

> Finally, Thomas challenges the sufficiency of the evidence on the structuring conviction regarding the definition of a financial institution. Thomas asserts that the Government failed to prove federal jurisdiction because it did not show that Hibernia and Hancock Banks were insured by the FDIC and therefore did not show that they are domestic financial institutions.

> The definition of a financial institution is found in 31 U.S.C. § 5312, which provides 26 different definitions, including a FDIC insured bank. § 5312(a)(2)(A). Financial institutions also are commercial banks, credit unions, insurance companies,

travel agencies, and other institutions not required to be insured by the FDIC. The Government was not required to prove that Hibernia and Hancock Banks are insured by the FDIC.

The Government presented evidence that a bank qualifies as a financial institution. The testimony of Agent Adams explained that banks are included within the definition of financial institutions and are subject to the reporting requirements of 31 U.S.C. § 5313(a). His testimony provides sufficient evidence for a rational trier of fact to conclude that Hibernia and Hancock Banks are financial institutions within the meaning of 31 U.S.C. § 5324.

*United States v. Thomas*, 176 F. App'x 625, 628 (5th Cir. 2006). Similarly, the Government presented evidence in this case that the banks involved were subject to the federal reporting requirements: Agent Lynn Barker, a criminal investigator for the IRS, testified at trial about financial institutions' obligation to file a currency transactions report for transactions over $10,000. This testimony satisfies *Jackson*.

### B. Violation of Confrontation Rights

Sutton argues that the district court improperly admitted evidence that violated his confrontation rights: three audio tapes made by Ron Bowen and government agents' testimony and rough notes from an interview with Joey Bowen. This court reviews evidentiary rulings under an abuse of discretion standard, but reviews Confrontation Clause claims de novo. *United States v. Pugh*, 273 F. App'x 449, 453 (6th Cir. 2008) (citing *United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007)). Because Sutton's arguments are based on different Confrontation Clause precedents, they will be considered separately.

### 1. The Tape Recordings

Sutton maintains that the district court ran afoul of the Confrontation Clause when it admitted statements obtained during wiretapped conversations. After meeting with federal officials, Ron

8

Bowen agreed to cooperate in the investigation of the conspiracy and wore a wire in conversations with his co-conspirators. Sutton's Confrontation Clause argument involves tapes made by Ron Bowen, which include: 1) an August 26, 2003 conversation between Ron Bowen, Rennie Turner, and Richie Turner, 2) an August 26, 2003 conversation between Ron Bowen, Rennie Turner, and Daniel Vandiford, and 3) an October 8, 2003 conversation between Ron Bowen, Rennie Turner, and Sutton. Many statements on these tapes, including statements made by Sutton, incriminate Sutton.

The Confrontation Clause gives an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. However, "because the Confrontation Clause is concerned with testimonial statements only, once it is determined that a statement is nontestimonial, only the rules of evidence may bar its admission." *Pugh*, 273 F. App'x at 454. Statements made in furtherance of a conspiracy are inherently non-testimonial. *Crawford v. Washington*, 541 U.S. 36, 56 (2004).

Sutton argues that the statements were testimonial because Ron Bowen was cooperating with the Government when the tapes were made. This court has consistently rejected the contention that the presence or participation of a government informant or agent makes all recorded comments testimonial. In *United States v. Mooneyham*, 473 F.3d 280 (6th Cir. 2007), this court reasoned:

> The threshold question, then, is whether McMahan's statement was "testimonial." In this regard, the proper inquiry is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir.2004). McMahan's statements were admitted into evidence under the theory that they were statements made by a co-conspirator in furtherance of the conspiracy. By definition, such statements are not by their nature testimonial; the one making them has no "awareness or expectation that his or her statements may later be used at a trial." *Id.* at 674 (internal quotation omitted). Indeed, the *Crawford* court specifically identified statements in furtherance of a conspiracy as examples of statements that are inherently non-testimonial. *See* 541 U.S. at 51, 56, 124 S.Ct.

9

1354 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). Because McMahan was not aware that Williams was a police officer, his remarks were not the product of interrogation and were not testimonial in nature. Hence, there was no *Crawford* error in the introduction of those remarks.

*Id.* at 286-87. *See also United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) ("[O]ur precedent makes clear that the intent of . . . the declarant [] determines whether the statements on the tape-recording are testimonial."). Accordingly, the statements by any of the co-conspirators, other than Bowen, are non-testimonial because the co-conspirators did not know they were being taped, and no *Crawford* error arose from their admission. Furthermore, despite Sutton's arguments otherwise, because non-testimonial out-of-court statements do not implicate the Confrontation Clause, this court does not need to determine whether the statements of the co-conspirators (other than Bowen's) comport with *Ohio v. Roberts*, 448 U.S. 56 (1980), or *Bruton v. United States*, 391 U.S. 123 (1968). *See United States v. Arnold*, 486 F.3d 177, 192-93 (6th Cir. 2007) (en banc) (noting that *Roberts* does not apply to non-testimonial out-of-court statements) *and Johnson*, 581 F.3d at 326 ("Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements.").

Therefore, the only plausible Confrontation Clause argument that Sutton makes is that the district court improperly admitted the statements made by Ron Bowen on the tapes. At trial, the Government conceded that Ron Bowen's statements were testimonial, which was correct since Ron Bowen would have reasonably believed that his statements would be used against Sutton and other co-defendants (including Bowen himself). *See Cromer*, 389 F.3d at 675. Nevertheless, the district court admitted most of the statements because they were being offered to provide context, not to establish the truth of the matter asserted. The district court did make one edit to the tapes, removing

a statement that the court found to be prejudicial and unnecessary to provide context. The district court also gave a separate limiting instruction at the time each tape was admitted into evidence and a single jury charge that discussed the Ron Bowen recordings.

This court has held that no Confrontation Clause violation occurs when statements by a government informant are admitted to provide context, not to establish the truth of the matter asserted. *United States v. Jones*, 205 F. App'x 327, 342-43 (6th Cir. 2006). *See generally United States v. Hendricks*, 395 F.3d 173, 184 (3d Cir. 2005) ("We thus hold that if a Defendant or his or her coconspirator makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the Confrontation Clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or coconspirator's nontestimonial statements into context."). In making this argument, Sutton does not specifically point to any statements that he believes were improperly admitted.

Examination of the record shows that Ron Bowen's statements were reasonably required to provide context. The conversations would not have made sense without the inclusion of his questions and statements. For instance, in one conversation Ron Bowen asked Rennie Turner: "And, and, and the folks - look, the folks - who made the money in the deal? Who made the money?" Turner responded, "Chris." If the judge had excluded all of Bowen's question, only the response "Chris" would have been admitted, rendering the evidence worthless. Therefore, because these statements were needed to provide context, no Confrontation Clause violation occurred. Moreover, even if some of these comments were found to have violated the Confrontation Clause, the error

11

would be harmless in light of the incriminating testimony at trial from co-conspirators and the extensive amount of other wiretap evidence.

## 2. The Interviews

Sutton argues that the district court violated *Bruton* when it admitted testimony by federal agent David Martin pertaining to incriminating statements made by Joey Bowen about Sutton and Martin's rough notes from that conversation. Sutton acknowledges that *Bruton* issues are not implicated in this case because Joey Bowen testified on his own behalf during Sutton's trial. *See United States v. Morrow*, 977 F.2d 222, 225 (6th Cir. 1992) (en banc) (holding that the cross-examination of a co-defendant defeats a *Bruton* claim); *see also Nelson v. O'Neil*, 402 U.S. 622, 627 (1971) ("The Constitution as construed in *Bruton* . . . is violated only where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross-examination."). Nevertheless, Sutton argues that his confrontation rights were violated because the district court failed to provide his counsel with the opportunity to cross-examine Joey Bowen. Specifically, Sutton maintains, without any supporting case law, that the district court had an obligation to ask him whether he wished to cross-examine Joey Bowen.

It is beyond dispute that a defendant has the right to cross-examine a co-defendant when the co-defendant's testimony incriminates him, as it did here. *See, e.g., Stanley v. United States*, 245 F.2d 427, 433 (6th Cir. 1957). However, simply because the trial judge did not ask Sutton on the record whether he wished to cross-examine Joey Bowen does not mean that his right to cross-examination was infringed. *See United States v. Grossley*, 224 F.3d 847, 864 (6th Cir. 2000). At trial, Sutton neither mentioned a desire to cross-examine Joey Bowen nor objected when the district court dismissed the witness and continued to proceed to the proof of Ron Bowen. It follows that no

error occurred, plain or otherwise. *See United States v. Deitz*, 577 F.3d 672, 683 (6th Cir. 2009) (citing *United States v. Powers*, 500 F.3d 500, 505 (6th Cir. 2007)).

## C. Sentencing

Sutton argues that the district court erred when it used a 2007 edition of the Sentencing Guidelines to calculate his sentence. He maintains that the district court should have used either the 1998, 1999, or 2000 Guidelines editions and that use of one of those editions would have resulted in a lower Guidelines range because of the lower fraud and deceit enhancements in those editions. Sutton did not object at trial; therefore, the district court's use of the 2007 Guidelines is reviewed for plain error. *United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005).

Sutton has failed to establish that an error occurred, let alone a plain one. Although "the Guidelines clearly instruct the court to apply the version in place at the time the defendant's offense was committed if applying the current Guidelines would amount to a violation of the *ex post facto clause*," *id.*, the court's use of the 2007 Guidelines did not implicate the ex post facto clause. Even though "the punishment for fraud committed on or after November 1, 2001, was increased when Part F-Offenses Involving Fraud and Deceit was eliminated and consolidated with Part B-Basic Economic Offenses[,]" *United States v. Green*, 242 F. App'x 343, 347 (6th Cir. 2007), Sutton was convicted of conspiring to structure transactions from December 1998 to February 2003. Thus, the conspiracy in this case continued beyond the time that use of an older version of the Guidelines would have changed the sentence because the Guidelines in effect in 2003 would have led to the same sentencing range as the 2007 Guidelines. This court has held that applying the current

Guidelines to a continuing offense does not violate the ex post facto clause, even if the sentence potentially encompasses acts that occurred prior to the Guidelines change:

> When an offense begins before but continues after the effective date of a Guideline or amendments thereto, the most recent Guideline applies. We have held that sentencing under the most recent Guideline for a continuing offense does not violate the *ex post facto* Clause. We conclude that the fraudulent activity at issue here constitutes a continuing offense. Defendant pled guilty to a single violation of 18 U.S.C. § 1344, which applies to whoever "executes, or attempts to execute, a scheme . . . to defraud a financial institution." Although there were multiple victims, they were defrauded through a single scheme. The character of their losses did not change when the Guideline was amended. The Guidelines in effect at the date of sentencing therefore apply to the entire scheme of bank fraud to which defendant pled guilty, whether or not the individual fraudulent loans were initiated before or after November 1, 1989.

*United States v. Buckner*, 9 F.3d 452, 454 (6th Cir. 1993) (citations omitted). Like in *Buckner*, the district court was correct to use the current edition of the Guidelines since Sutton's conduct continued until 2003. S*ee Green*, 242 F. App'x at 348 (holding *Buckner* to be controlling in a conspiracy case similar to this one).

Sutton also appears either to argue that the district court would have been more likely to give a lower sentence when applying the 18 U.S.C. § 3553(a) sentencing factors if the correct Guidelines were used or to raise a separate issue with regard to the reasonableness of his sentence without any supporting argument. The first argument is moot since the court used the correct Guidelines edition. The second argument fails without more support because Sutton has mentioned nothing that suggests that the district court improperly applied § 3553(a) in the sentencing determination. Sutton also argues that the district court erred because there were no identified victims in his pre-sentence report, but he fails to specify why this makes his sentence unreasonable. There are no cases or plausible arguments that suggest that a sentence is unreasonable simply because the defendant was convicted

14

of a crime without specific victims. Finally, Sutton argues that Oldham, who Sutton claims was a similarly situated co-defendant, only received five years of probation. However, it is the reasonableness of Sutton's sentence that is at issue, not Oldham's. *United States v. Burley*, 241 F. App'x 290, 299 (6th Cir. 2007). Moreover, Oldham, unlike Sutton, pled guilty and assisted the Government.

### III. Rennie Turner's Appeal

Rennie Turner appeals the reasonableness of his sentence of fifty-one months in prison. He does not appeal his Total Offense Level of twenty-four or his Criminal History Category of I. Instead, he argues that the court failed to adequately consider his compelling mitigating circumstances and considered an impermissible factor.

This court reviews the reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Thompson*, 515 F.3d 556, 560 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). When this court reviews a sentence, it ensures that the district court committed no significant procedural errors and then considers the substantive reasonableness of the sentence imposed. *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008) (quoting *Gall*, 552 U.S. at 51)). "A sentence is procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Simmons*, 501 F.3d 620, 624-25 (6th Cir. 2007) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)) (internal quotation marks omitted). "A sentence is substantively unreasonable when the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable

15

amount of weight to any pertinent factor.'" *Id.* at 625 (quoting *Webb*, 403 F.3d at 385). Because Rennie Turner received a within-Guidelines sentence, the district court's determination enjoys a rebuttable presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). Because both of Turner's arguments relate to the substantive reasonableness of his sentence, we do not need to review his sentence for procedural reasonableness.

## A. Mitigating Evidence

Rennie Turner argues that the district court failed to consider relevant mitigating evidence when fashioning his sentence. He presented multiple reasons for a lenient sentence to the district court at his sentencing hearing: (1) he was orphaned at a young age; (2) he is elderly; (3) he has had substantial medical problems including a) pins in his knee from a football injury in high school, b) pins in his shoulder, two artificial hips, and a fused back as a result of a workplace injury that left him one hundred percent disabled, c) diabetes, d) high blood pressure, e) a missing finger, f) triple bypass surgery a few years ago, g) spot on his lung that could later prove problematic; (4) he is a non-violent first-time offender; (5) he did not accumulate any assets from the conspiracy and only entered the conspiracy to pay rent after going on disability; (6) he was a low-level player in the conspiracy; and (7) he pled guilty early on in the investigation.

A district court must adequately explain its reasons for imposing a sentence to enable the appellate court to review the district court's decision for reasonableness. *United States v. Williams*, 432 F.3d 621, 622 (6th Cir. 2005). With regard to mitigating evidence, "[w]hile the district court need not explicitly reference each of the sentencing factors of § 3553(a), there must be sufficient evidence in the record to affirmatively demonstrate the court's consideration of [these factors]."

16

*Thompson*, 515 F.3d at 560 (quoting *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006)) (internal quotation marks omitted).

The district court met these requirements. The district court considered the mitigating circumstances mentioned by Rennie Turner but still sentenced him to fifty-one months in prison because it felt that he had not fully accepted responsibility for his actions:

> I think that Mr. Turner's health concerns are very substantial, and that weighs heavily on the Court in this calculation of the 3553 factors. The other factors, of course, have merit as well, and lean towards a non-guideline sentence. However, what the Court finds is that Mr. Turner really hasn't accepted full responsibility for his crime and the scope of his crime. He's denied what's on the audiotapes over and over again. It's there to be heard, it's coherent, and what appears to be for reasons of protecting family members won't admit the full scope of his crime.
>
> And that outweighs all these mitigating circumstances. And that's the difference between Mr. Turner and the people that have gotten probation in this case. They stood here and said I did it, I have remorse, I'm sorry.
>
> Now, Mr. Turner has a right, of course, not to speak, and I'm not holding that against him. But his continual denial of what he said on the audio recordings reflects a lack of acceptance of responsibility for the scope of the crime. And as a result I think a guideline sentence is what's appropriate. This case would otherwise call for leniency, but Mr. Turner has stubbornly denied the obvious.
> And I'm going to sentence you, Mr. Turner, to the bottom of the guideline sentence, a sentence of 51 months.[3]

Moreover, we find unpersuasive Turner's argument that there was insufficient record evidence to support the district court's conclusion that he had not accepted responsibility for his criminal conduct because of "his continual denial of what he said on the audio recordings." At sentencing, Turner argued that he played a minor role in the conspiracy. In doing so, he contested the veracity of certain statements that he made while unknowingly being taped by Ron Bowen.

---

[3]The district court felt Rennie Turner had attempted to protect Sutton. After his parents died, Rennie Turner was raised by his sister Betty. She married Charles Sutton, and had a son Chris. Therefore, Sutton is Rennie Turner's nephew, and they were raised as brothers.

These statements suggested that Turner had an extensive knowledge of the size and scope of the

conspiracy and that he knowingly delivered large amounts of cash to tobacco executives as bribes.

Turner argues that it was his trial counsel that contested the veracity of the statements on the tapes,

not Turner himself. Generally, however, "clients must be held accountable for the acts and

omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S.

380, 396 (1993). As explained by the Supreme Court:

> Petitioner voluntarily chose this attorney as his representative in the action, and he
> cannot now avoid the consequences of the acts or omissions of this freely selected
> agent. Any other notion would be wholly inconsistent with our system of
> representative litigation, in which each party is deemed bound by the acts of his
> lawyer-agent and is considered to have notice of all facts, notice of which can be
> charged upon the attorney.

*Id.* at 397 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962)) (internal quotation marks

omitted). In light of this general rule, Turner's failure to provide case law that leads to a contrary

conclusion, and the fact that Turner has not attempted to retract any of these statements made by his

attorney, we cannot say that the district court abused its discretion when it used statements by

Turner's counsel to fashion the sentence.

## B. Consideration of an Impermissible Factor

Rennie Turner argues that it was unreasonable for the district court to credit him with a two-

level reduction for acceptance of responsibility, but then to refer to his failure to accept responsibility

for his crime, specifically his lack of remorse, as a reason for his Guidelines-range sentence.[4] He

offers no case law in support of this assertion. As an initial matter, we note that repeated denials

---

[4]The Fifth Circuit referred to this kind of claim as procedural, but it is arguably a
substantive reasonableness claim under Sixth Circuit precedent because a sentence is
substantively unreasonable when a district court "bas[es] the sentence on impermissible factors."

18

about the contents or the tapes would not necessarily lead to a conclusion that Turner lacked remorse, but it was not an abuse of discretion for the district court to interpret Turner's denial as evidence of a lack of remorse. The judge could have reasonably concluded that Turner's dishonesty regarding important pieces of evidence indicated that he had not fully accepted responsibility for his participation in the conspiracy.

Furthermore, we are not convinced by Turner's argument that a district court abuses its discretion when it credits a defendant with a two-point deduction for acceptance of responsibility and later refers to his failure to accept responsibility for his crime as a reason for his guidelines range sentence. The Fifth Circuit recently considered this issue, and its analysis is instructive:

> The district court determined that [the defendant] was not remorseful based on his comments regretting leaving Mexico, and [the defendant] does not dispute the court's characterization of those comments. Under the advisory Sentencing Guidelines, the district court must consider various factors in crafting an individualized sentence and is free to give more or less weight to factors already accounted for in that advisory range. *See United States v. Williams*, 517 F.3d 801, 809 (5th Cir. 2008). Other than § 3E1.1, [the defendant] points to nothing in the Guidelines that might require the district court to adjust its calculation of the advisory range for lack of remorse. Therefore, the court did not commit procedural error by granting him an offense level reduction for the acceptance of responsibility evidenced by his guilty plea while calculating the Guidelines and then sentencing him to an above-range non-Guideline sentence based on its assessment of the § 3553(a) factors, including its finding that the defendant lacked remorse for his crime.

*United States v. Douglas*, 569 F.3d 523, 527-28 (5th Cir. 2009); *see also United States v. Jones*, 509 F.3d 911, 914 (8th Cir. 2007) ("We have held that a district court may impose an upward variance based on facts already included in the advisory sentencing guidelines where the advisory guidelines do not fully account for those facts."). The above analysis is even more persuasive in the instant case because Rennie Turner is appealing a guidelines range sentence. Accordingly, the district court did not abuse its discretion when it considered Turner's perceived lack of remorse.

19

## IV.  Conclusion

For the foregoing reasons, we **AFFIRM**.