NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0873n.06

No. 13-4261

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 20, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| LEE WURZELBACHER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |

BEFORE: McKEAGUE and KETHLEDGE, Circuit Judges; BERTELSMAN, District Judge.[1]

**PER CURIAM.** Defendant-Appellant Lee Wurzelbacher ("Wurzelbacher") pled guilty to two crimes associated with his leading and organizing a marijuana trafficking conspiracy over a six-year period and was sentenced to 174 months in prison. He now appeals his sentence, challenging the district court's imposition of two sentencing enhancements: (1) a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing controlled substances—on the grounds that it violates the Ex Post Facto Clause; and (2) a two-level enhancement for obstruction of justice—on the grounds that the district court failed to make factual findings to support the enhancement, in violation of Federal Rule of Criminal

---

[1] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Procedure 32(i)(3)(B). Because the district court did not err in imposing these enhancements, we **AFFIRM** the district court's sentence.

I.

From June 2006 until July 2012, Wurzelbacher was the leader and organizer of a large-scale marijuana conspiracy operating primarily in southwest Ohio and involving more than a dozen people. On July 25, 2012, a grand jury in the Southern District of Ohio returned an eighteen-count indictment against Wurzelbacher and others, charging them with federal drug and money laundering crimes arising out of the conspiracy.

On January 4, 2013, Wurzelbacher pled guilty pursuant to a written plea agreement. Under the terms of the plea agreement, Wurzelbacher agreed to plead guilty to Count One—conspiracy to distribute in excess of 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, and Count Five—conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

Although the parties did not agree to a specific sentencing recommendation, they agreed that Wurzelbacher's base offense level was 32 under the United States Sentencing Guidelines and that he should receive a four-level enhancement under U.S.S.G. § 3B1.1 for his leadership role in the offenses. The government agreed to recommend that the defendant receive a two-level adjustment for acceptance of responsibility; the adjustment would increase to three levels at sentencing if Wurzelbacher continued to accept responsibility.

The plea agreement also included a written Statement of Facts that Wurzelbacher swore was true and accurate. Wurzelbacher made two admissions in the Statement of Facts that are

relevant here. First, Wurzelbacher admitted that "[d]uring the conspiracy [he] used a farm house and the residence of [his father] James C. Wurzelbacher to break down bales of marihuana and store it for distribution." Second, Wurzelbacher admitted that after his friend and co-conspirator Kevin Howard's arrest on November 2, 2009, he "paid for Howard's attorney and paid Howard money for his silence."

Based on these admissions, the United States Probation Office recommended in its Presentencing Investigation Report ("PSR") that the district court impose two additional sentencing enhancements under the 2012 Guidelines: a two-level enhancement for maintaining a drug premises under U.S.S.G. § 2D1.1(b)(12) and a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.

Wurzelbacher filed written objections to both enhancements in advance of sentencing. He argued that the drug premises enhancement did not apply because the "provision was designed primarily to attack crack houses," and neither his father's residence nor the farmhouse was primarily used to package marijuana. Wurzelbacher claimed he acquired the property "to use as a fishing and hunting camp" but conceded that "he used a room in [his father's] house to divide shipments [of marijuana]." Regarding the obstruction of justice enhancement, Wurzelbacher maintained that it did not apply because the money he used to pay Kevin Howard's attorney "was Mr. Howard's money that [Wurzelbacher] had access to and which he brought to the lawyer."[2]

---

[2] Importantly, Wurzelbacher did not object to Probation using the 2012 Guidelines to calculate his advisory Guidelines range. Nor did he argue that imposing the drug premises enhancement would violate the Ex Post Facto Clause.

At sentencing on October 17, 2013, Wurzelbacher again objected to the drug premises and obstruction of justice enhancements. Consistent with his written objection, Wurzelbacher argued that the drug premises enhancement "was designed specifically with the idea of individuals who would use houses, basically crack houses, inner-city crack houses [that] were set up purely for distribution purposes." Therefore, he argued the enhancement did not apply because nothing "in the Statement of Facts or the evidence presented in this case indicate[d] that that was the sole purpose for that house."[3] Regarding the obstruction of justice enhancement, Wurzelbacher acknowledged the contents of the Statement of Facts but added that he "has always denied ever threatening a lawyer."

The district court overruled both objections. It concluded that the drug premises enhancement applied because "the farmhouse was supposed to be used primarily as a hunting and fishing camp, but in the Statement of Facts [Wurzelbacher] acknowledged that he used the residence to break down the bales of marijuana stored for distribution." Further, the district court concluded that the obstruction of justice enhancement applied because Wurzelbacher admitted to paying Howard to remain silent.

The district court then calculated Wurzelbacher's advisory Guidelines range using the 2012 Guidelines, determining that his Total Offense Level was 34 (accounting for the various enhancements and crediting him for, among other things, acceptance of responsibility and timely notification). Combined with a Criminal History Category II, the district court preliminarily determined that Wurzelbacher's advisory Guidelines range was 168–210 months.

---

[3] It is not clear whether Wurzelbacher, in making the initial objection at sentencing, was referring to his father's house or the farmhouse. Further, when overruling the objection to the drug premises enhancement, the district court did not address whether Wurzelbacher's use of his father's house would have also triggered the enhancement.

Before proceeding, the district court asked Wurzelbacher's counsel if he had "any further objections that [he] wish[ed] to place on the record regarding the calculation at this time[.]" Defense counsel replied, "No, Your Honor." Following up, the district court asked both parties, "Not as to mitigation but as to the Statement of Facts or the calculation, are there any additional facts that you think need to be included in the presentencing investigation at this time?" Both said, "No."

"Having resolved the objections" to the Guidelines calculation, the district court adopted the findings of fact from the PSR and declared that Wurzelbacher's advisory Guidelines range was 168–210 months. After allowing Wurzelbacher to make a final statement, and again asking counsel if there was anything to add, the district court sentenced Wurzelbacher to 174 months' imprisonment for each count of conviction to run concurrently. Additionally, the court levied a $2,000 fine and imposed five years of supervised release.

After announcing the sentence, the district court asked defense counsel to restate his objections to the drug premises and obstruction of justice enhancements for the record. Defense counsel complied. The district court gave defense counsel one final opportunity to make any objection, which was declined.

II.

We review Wurzelbacher's challenges for plain error because he raises these objections for the first time on appeal. *See, e.g.*, *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) ("A party who neglects to make an objection, even after being given 'an opportunity' to do so, forfeits the argument and may obtain relief on appeal only if the error is 'plain' and 'affects substantial rights.'" (quoting Fed. R. Crim. P. 52(b))), *cert. denied*, 555 U.S. 816 (2008);

*United States v. Blair-Torbett*, 230 F. App'x 483, 490 (6th Cir. 2007) (stating that an objection made on appeal that is different from that made at sentencing is reviewed for plain error). The record reflects that Wurzelbacher had a meaningful opportunity to object during the sentencing hearing given that the district court asked six times whether he had anything to add. *See Vonner*, 516 F.3d at 385 (providing an example of a line of questioning by a district court deemed to provide a "meaningful opportunity"). Therefore, to prevail, Wurzelbacher must show error that "was obvious or clear" and "affected defendant's substantial rights." *Vonner*, 516 F.3d at 386. We then have discretion to correct that error if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

III.

A. Drug Premises Enhancement Challenge

Wurzelbacher contends that the district court improperly imposed the drug premises enhancement because the enhancement went into effect November 1, 2010, and his conspiracy began before that date. Wurzelbacher argues that it is unclear whether he used the farmhouse at the time the enhancement went into effect because the district court made no such factual findings and the parties' agreed Statement of Facts stipulates only that use occurred "[d]uring the conspiracy." If use of the farmhouse for drug purposes ceased prior to the enhancement's enactment, Wurzelbacher argues, imposing the enhancement would violate the Ex Post Facto Clause. *See Peugh v. United States*, 133 S. Ct. 2072, 2078 (2013) (holding that an Ex Post Facto Clause violation occurs "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines

sentencing range than the version in place at the time of the offense"). This ambiguity about when his criminal use of the farmhouse ended, he insists, should be construed against the government, requiring a remand for additional fact finding.

No such proceedings are required here. Even if Wurzelbacher had argued and proved that he ceased using the farmhouse in the conspiracy prior to November 1, 2010, the drug premises enhancement would still apply because the conspiracy itself was ongoing. We have held that applying the Guidelines in effect at the time of sentencing to a continuing offense, such as a conspiracy, "does not violate the ex post facto clause, even if the sentence potentially encompasses acts that occurred prior to [a] Guidelines change." *United States v. Sutton*, 387 F. App'x 595, 604 (6th Cir. 2010) (citing *United States v. Buckner*, 9 F.3d 452, 454 (6th Cir. 1993)). Moreover, the district court must apply the Guidelines Manual then in effect "in its entirety" unless doing so would violate the Ex Post Facto Clause. U.S.S.G. § 1B1.11(a)–(b). The Guidelines do not permit the court, as Wurzelbacher hints, to apply one guideline section from one edition and another guideline section from another edition. *Id.* § 1B1.11(b)(2). Further, U.S.S.G. § 1B1.11(b)(3) provides that "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." *See also United States v. Duane*, 533 F.3d 441, 447 (6th Cir. 2008) (applying this provision). Because Wurzelbacher's conspiracy began in June 2006 and ended in July 2012, the district court properly used the 2012 Guidelines to calculate his sentence.[4] Thus, the district court did

---

[4] U.S.S.G § 1B1.11(a)–(b)(1) provides that the court "shall use the Guidelines Manual in effect on the date that the defendant is sentenced" unless doing so would violate the Ex Post Facto Clause. Thus, the district court properly used the 2012 Guidelines, effective November 1, 2012,

not err in imposing the drug premises enhancement based on Wurzelbacher's admission that he used the farmhouse for distribution purposes "during the conspiracy."

### B. Obstruction of Justice Enhancement Challenge

Wurzelbacher next argues that the district court erred in imposing the obstruction of justice enhancement because it failed to make factual findings as to whether Wurzelbacher's payment of Howard's attorney's fees constituted obstruction of justice, given that Wurzelbacher had denied ever making any threats in order to impede the investigation. He argues that Federal Rule of Criminal Procedure 32(i)(3)(B) bars the court from simply adopting the presentence report and instead requires the court to "actually find facts" and to "do so by a preponderance of the evidence."

We reject Wurzelbacher's argument. Federal Rule of Criminal Procedure 32(i)(3)(B) requires a district court to rule only on "controverted" matters. The obstruction of justice enhancement applies if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice . . . ." U.S.S.G. § 3C1.1. Though Wurzelbacher objected to the enhancement on the grounds that he never threatened anyone with the intent to impede the investigation, he admitted in the Statement of Facts forming the basis of his plea agreement that he "paid Howard money for his silence." Numerous times we have found that bribing a witness to remain silent or to testify in a certain way supports imposition of the obstruction of justice enhancement. *See, e.g.*, *United States v. Withers*, 405 F. App'x 951, 952–53 (6th Cir. 2010) (affirming the enhancement where the defendant sent a letter seeking to have a witness paid to

at Wurzelbacher's sentencing on October 17, 2013, even though Wurzelbacher's conspiracy ended in July 2012.

testify falsely); *United States v. Moore*, 240 F. App'x 699, 712 (6th Cir. 2007) (affirming the enhancement where a defendant attempted to silence a witness); *United States v. Bingham*, 81 F.3d 617, 632 (6th Cir. 1996) (affirming the enhancement where defendant attempted to influence witness testimony); *United States v. Moss*, 9 F.3d 543, 553–54 (6th Cir. 1993) (affirming the enhancement where a defendant asked a co-conspirator to bribe another co-conspirator to refuse to testify or to alter his testimony by offering him $25,000). Thus, where the district court had an independent, uncontroverted basis upon which to impose the enhancement—Wurzelbacher's admission to paying Howard to remain silent—the district court did not err in declining to make factual findings regarding an alternate, controverted basis for the enhancement.

## IV.

For the foregoing reasons, we **AFFIRM**.